## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

D.A. NOLT, INC.,                                    :
           Plaintiff,                     :
                                 :         CIVIL ACTION
               v.                           :
                                 :         NO. 12-5810
LOCAL UNION NO. 30, UNITED UNION :
OF ROOFERS, WATERPROOFERS AND :
ALLIED WORKERS, et al.,                       :
           Defendants.                    :

**October 22, 2015**                                            **Anita B. Brody, J.**

### MEMORANDUM

Plaintiff D.A. Nolt, Inc. ("Nolt"), a roofing contractor, brings suit against Defendants Local Union No. 30 and its associated union benefits funds (collectively "Local 30"). Nolt moves for summary judgment and requests the following relief: a declaratory judgment that two provisions of a project labor agreement ("PLA") among the parties are illegal under New Jersey law; a declaratory judgment that Nolt is not legally bound by these PLA provisions; and a judgment that vacates an arbitration award pursuant to the PLA provisions at issue. In the alternative, Nolt requests an order modifying the arbitration award to correct an error in the arbitrator's calculation of the award amount. Local 30 also moves for summary judgment and requests a judgment affirming the arbitrator's award and entry of judgment against Nolt. Additionally, Local 30 seeks reasonable attorneys' fees and costs. Diversity jurisdiction exists over Nolt's claims pursuant to 28 U.S.C. § 1332. For the reasons stated below, I will deny in part and grant in part Plaintiff's Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment.

## I.    BACKGROUND

The South Jersey Building and Construction Trades Council ("Trades Council") and Greater Egg Harbor Regional High School District executed a PLA that governed two construction projects for which Nolt was general contractor.  Nolt is a signatory to the PLA for its work on these projects.  Local Union No. 30 is a member of the Trades Council and a signatory to the PLA.  The PLA requires contractors to hire only union employees, with two exceptions.  The PLA permits a contractor to fill up to twelve percent of its workforce with non-union employees who meet certain conditions.  The PLA also permits a contractor to fill open spots in the workforce with non-union employees, above the twelve percent cap, if the local union is unable to fill open spots within a forty-eight hour period.  Nolt took advantage of both of these provisions, using union and non-union employees to conduct work on the project.[1]

Article 11, Section 2 of the PLA, entitled "Employee Benefit Funds," requires that:

> The Contractors agree to pay contributions on behalf of all employees covered by this Agreement to the established employee benefit funds in the amount designated in the appropriate collective bargaining agreement.

Pl.'s Mot. Summ. J. Ex. E, at 40.[2]

---

[1] Both parties agree that Nolt's use of non-union workers on the project did not violate the limits on non-union workers provided in the PLA.

[2]      In its request for relief, Nolt also references another provision of the PLA, Article 4, Section 6, entitled "Union Dues/Working Assessments."  The Union Dues/Working Assessments provision of Article 4, Section 6 requires Nolt to pay "working assessments" to Local 30, in lieu of union dues, for all "unaffiliated employees."  "In the case of unaffiliated employees, the dues payments can be received by the Unions as a working assessment fee." Pl.'s Mot. Summ. J. Ex. E, at 17.  Nolt did not pay "working assessments" to Local 30 for any of its non-union employees.  The arbitrator awarded Local 30 the working assessment fees Nolt owes for the hours its non-union employees worked on the project.

In Nolt's opening request for relief, Nolt states that it also seeks a declaratory judgment that the Union Dues/Working Assessments provision of the PLA, Article 4, Section 6, is illegal, and a judgment that vacates the arbitration award requiring Nolt to pay Local 30 working assessment fees it owes for its non-union employees.  Nolt does not present any argument about the working assessments provision, Article 4, Section 6, to support its position and the relief it seeks.  As a result, I will only discuss Article 11, Section 2, the Employee Benefit Funds provision that requires Nolt to make contributions to the union benefits funds.

Local 30 interprets this provision to require Nolt to pay contributions to the Funds for *all* employees working on the project, union and non-union alike.  Nolt concedes that on its face, the operative PLA language seems to apply to all employees covered by the PLA.  Pl.'s Mot. Summ. J. 2.  Nolt contends, however, that when "read in any meaningful context," the provision is inapplicable to non-union employees hired pursuant to the stated exceptions provided for by the PLA.  *Id.*

The "Employee Benefit Funds" section of the PLA also includes a procedure to follow in the event that a contractor fails to pay these funds:

> In the event of any delinquency a meeting will be held immediately between the Union, the delinquent contractor, the [Trades Council] President and the Construction Manager. A statutory fringe benefit payment arrangement shall be facilitated at this meeting.

Pl.'s Mot. Summ. J. Ex. E, at 40.

The PLA agreement also contains a section entitled "Grievance & Arbitration Procedure," located at Article 9.  Pl.'s Mot. Summ. J. Ex. E, at 27.  This section provides that:

> Any question, dispute or claim arising out of, or involving the interpretation or application of this Agreement . . . shall be considered a grievance and shall be resolved pursuant to the exclusive procedure of the steps described below; provided, in all cases, that the question, dispute or claim arose during the term of this Agreement.

*Id.*  The Grievance & Arbitration Procedure section sets out a three-step dispute resolution process.  First, a signatory to the PLA who has a dispute with another PLA signatory must meet and confer with the signatory regarding the dispute.  *Id.* at 28.  If, after conferring, the signatories do not reach a settlement within three days, the dispute "shall be reduced to writing" and proceed to Step 2.  *Id.*  The written copy of the grievance must describe the dispute, state the date on which the grievance occurred, and specify the provisions of the PLA alleged to have been

violated.  *Id.* at 27-28.  Step 2 requires representatives from the Trades Council, union,

contractor, and construction manager to meet within five days of the written grievance to "arrive

at a satisfactory settlement."  *Id.*

If the parties cannot resolve a grievance through the first two steps of the procedure, they

may proceed to Step 3 and submit the grievance to an arbitrator.  Pl.'s Mot. Summ. J. Ex. E, at

29.  At the end of Step 3 of the dispute resolution process, the agreement states:

> The Arbitrator shall have authority to make decisions only on the issues presented
> to him and shall not have the authority to change, add to, delete or modify any
> provision of this agreement.

*Id.*

When this dispute first arose, Local 30 sought resolution through arbitration pursuant to

Article 9, the Grievance and Arbitration provision of the PLA.  Nolt brought this action, seeking

to enjoin Local 30 from pursuing claims against Nolt through arbitration, and requesting a

declaratory judgment finding that the PLA provisions were illegal insofar as they could be

interpreted to require Nolt to pay into the funds for Nolt's non-union employees.  On February 7,

2013, I stayed this case and compelled arbitration.  I found that the arbitration provision in the

PLA required the arbitrator to interpret the meaning of "all employees" in the Employee Benefit

Funds provision.[3]

Arbitrator J.J. Pierson issued an Opinion and Award on September 25, 2014, following

two days of arbitration hearings.  Opinion and Award, Pl.'s Mot. Summ. J. Ex. I ("Opinion and

Award").  The arbitrator found that Local 30 had properly raised a grievance pursuant to the

---

[3] In my February 7, 2013 Order, I vacated an earlier order postponing arbitration and stayed the case pending
arbitration proceedings.  I specifically stated that the interpretation of the disputed PLA provision, Article 11,
Section 2, "falls within the scope of the arbitration agreement" and denied Nolt's motion to enjoin arbitration. ECF
No. 15.  This, in effect, compelled arbitration between the parties.

PLA procedures.  Opinion and Award, at 20.  The arbitrator determined that he had jurisdiction to interpret the Employee Benefit Funds provision and address Local 30's demand for payment of benefits for Nolt's non-union employees.  *Id.*  The arbitrator interpreted the Employee Benefit Funds provision that requires contractors to pay benefits to union benefit funds on behalf of "all employees covered by this agreement" to include all employees employed by Nolt, regardless of union affiliation:

> It is the opinion of this Arbitrator that the obligations imposed by Article 11 applied to Nolt, regardless of whether Nolt's employees were members of Local 30 ('union') or not members of Local 30 ('non-union')  .  .  .  .  Nolt, a Contractor performing under a recognized PLA, was unequivocally required to pay contributions to Local 30's employee benefit fund on behalf of all employees performing covered work under the PLA, whether union or nonunion affiliated.

Opinion and Award, at 22-24.  The arbitrator ruled that the "clear and unambiguous contract language" required Nolt to make contributions into Local 30's benefit funds for all employees, and awarded Local 30 $492,000 in benefit fund contributions.[4]  *Id.* at 26-27.

Upon completion of arbitration, I lifted the stay.  On March 20, 2015, both parties moved for summary judgment.  Local 30 moves for summary judgment to uphold the arbitrator's award on the grounds that there is no factual dispute regarding the arbitrator's award or the arbitrator's jurisdiction to issue the award, and that the award does not violate New Jersey law.  Nolt moves for summary judgment on the grounds that the arbitrator lacked jurisdiction to consider Local

---

[4] Both parties attach as an exhibit to their respective motions for summary judgment a joint stipulation agreeing that if this Court upholds the arbitration award, the arbitrator's calculations of the total hours worked by Nolt's non-union employees and the total dollar amount Nolt owes the benefit funds are incorrect.  Joint Stipulation, Pl.'s Mot. Summ. J. Ex. G; Defs.' Mot. Summ. J. Ex. 12.  According to the Joint Stipulation, the correct number of hours worked by Nolt's non-union employees is 12,873.75.  Neither party has submitted a revised dollar amount that reflects the uncontested amended  number of hours.  Nolt suggests the dollar amount is closer to $325,000.  Pl.'s Am. Compl. 19.  Because I am upholding the arbitrator's award, the parties must submit a joint revised dollar amount based on the agreed revised number of hours worked by Nolt's non-union employees.

30's grievance, and that the arbitrator's award manifestly disregards the law and violates New Jersey wage laws and public policy.

## II.   LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir. 1968). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998).

## III.   DISCUSSION

To resolve the motions for summary judgment, two issues must be addressed: 1) whether the arbitrator was acting within his authority when he determined that he had jurisdiction to hear Local 30's dispute and interpret the Employee Benefit Funds provision of the PLA; and 2) whether the arbitrator's ruling that the Employee Benefit Funds provision requires Nolt to pay into the union benefits funds for Nolt's non-union employees violates New Jersey law.

## A.  <u>The Arbitrator's Jurisdiction Over Local 30's Grievance</u>

Nolt argues that the arbitrator improperly exercised jurisdiction over Local 30's grievance because Local 30 failed to follow the grievance procedure outlined in the Grievance & Arbitration Procedure provision of the PLA, rendering its grievance "null and void."  Pl.'s Mot. Summ. J. 1-2.  According to Nolt, the arbitrator's interpretation of the PLA grievance procedure and his conclusion that he had jurisdiction to hear Local 30's claim, despite Local 30's deviation from the formal procedural requirements, violates the PLA and therefore does not draw its essence from the PLA.

Local 30 counters that the arbitrator's determination that he had jurisdiction to hear Local 30's claim falls squarely within his arbitral jurisdiction because it involves an interpretation of the agreement's grievance procedure and a factual finding that Local 30's conduct satisfied the

procedure provisions.  Local 30 contends that its grievance qualifies as a grievance under the

Grievance & Arbitration Procedure provision of the PLA because it involves a "question, dispute

or claim arising out of, or involving the interpretation or application of [the PLA]" and therefore

triggers the PLA's arbitration provision.  Pl.'s Mot. Summ. J. Ex. E, at 27.

   "[O]nce a court finds that . . . the parties are subject to an agreement to arbitrate, and that

agreement extends to any difference between them, then a claim that particular grievances are

barred . . . is an arbitrable question under the agreement."  *International U. of Op. Eng. v. Flair*

*Builders, Inc.*, 406 U.S. 487, 493 (1972).  In *Flair*, a company argued that its defense of laches in

a suit over the company's noncompliance with an agreement with a union was beyond the scope

of the agreement's arbitration clause.  *Id.* at 488.  The Supreme Court rejected the company's

argument, finding that the company's laches defense fell within the scope of the general

arbitration agreement between the parties.  *Id.* at 489-91.  "Having agreed to the broad clause, the

company is obliged to submit its laches defense, even if 'extrinsic,' to the arbitral process." *Id.* at

492.

   After a court determines that the parties agreed to submit their disputes to the arbitration

process, the court must accept the arbitrator's interpretations of the arbitration agreement "unless

it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."

*AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) (discussing

*Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

   A court's review of an arbitrator's decision is limited.  *See, e.g.*, *Int'l Bhd. of Teamsters*

*v. W. Pa. Motor Carriers Ass'n.*, 574 F.2d 783, 786 (3d Cir. 1978).  "When an arbitrator has

jurisdiction over a dispute, the merits of his award will be reviewed very narrowly . . . . The award will not be disturbed unless it can in no rational way be derived from the agreement or unless there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop." *Id.* (internal quotation marks omitted).  Thus, a reviewing court must uphold an award unless the award "is not in any rational way derived from the . . . agreement." *United Steelworkers of Am. v. Am. Smelting and Refining Co.*, 648 F.2d 863, 867 (3d Cir. 1981), *cert. denied*, 454 U.S. 1031 (1981).

In an earlier proceeding, I decided that the dispute over the interpretation of the meaning of the Employee Benefit Funds provision fell within the scope of the arbitration provision of the PLA. [5]  During the arbitration proceedings, and again in its summary judgment filings before this Court, however, Nolt argues that the arbitrator lacked jurisdiction to hear the dispute.  Nolt contends that because Local 30 failed to strictly adhere to the procedural requirements of the

---

[5]      The Supreme Court describes arbitration as a matter of contract, where the parties must agree to submit their disputes to such a process.  *AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-50 (1986). There is a presumption of arbitrability where a contract contains an arbitration clause.  *Id.*  This presumption is bolstered by the "strong federal policies that favor arbitration of labor disputes, which are largely premised upon the 'arbitrator's superior expertise in the mechanics of collective bargaining and collective bargaining agreements, greater understanding of the law of the shop, and greater efficiency in resolving labor disputes.'"  *United Steelworkers of Am. v. Rohm and Haas Company*, 522 F.3d 324, 330 (3d Cir. 2008) (quoting *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 399 (3d Cir. 1994)).  The Third Circuit determines arbitrability based on a three step analysis:

> (1) Does the present dispute come within the scope of the arbitration clause? (2) does any other provision of the contract expressly exclude this kind of dispute from arbitration? and  (3) is there any other "forceful evidence" indicating that the parties intended such an exclusion?

*E.M. Diagnostic Sys., Inc. v. Local 169*, 812 F.2d 91, 95 (3d Cir. 1987).
      The parties dispute whether Nolt must pay non-union employee benefits into the union funds.  There are no provisions in the contract that exclude this dispute from arbitration, nor any "forceful evidence" indicating that the parties intended such an exclusion.  Thus, the only question is whether the dispute falls within the scope of the arbitration clause to trigger the arbitrator's jurisdiction.  In my February 7, 2013 Order, I determined that the dispute over the interpretation of the Employee Benefit Funds provision fell within the scope of the arbitration provision.

grievance process outlined in the Grievance & Arbitration Procedure provision by not timely submitting its grievance in writing, its grievance is null and void.

Nolt's procedural defense against Local 30's claim for nonpayment to the union funds falls within the scope of the general arbitration provision in the PLA.  Nolt properly submitted its procedural argument to the arbitrator.  The arbitrator addressed this argument, but found that:

> . . . Nolt had notice of and was well aware of the nature of the underlying dispute.  Nolt was also made aware of the process of arbitration to resolve such matters under the PLA. As such, this Arbitrator does not find the grievance null and void and, instead, sustains the appropriate timeliness and arbitrability of Local 30's grievance.

Pl.'s Mot. Summ. J. Ex. E, at 20.  These findings address a "question, dispute or claim… involving the interpretation or application" of the PLA, and therefore fall squarely within the scope of the arbitrator's jurisdiction as provided by the PLA arbitration provision. The arbitrator was therefore acting within his exclusive arbitral jurisdiction when considering and rejecting Nolt's procedural defense.   The arbitrator's decision is based on his interpretation of the language and procedures governing the arbitration process in the PLA and therefore is "derived from the agreement." *United Steelworkers of Am. v. Am. Smelting and Refining Co.*, 648 F.2d at 867.  I must therefore defer to the arbitrator's determination that Local 30's grievance was arbitrable under the PLA.

## B.  Legality of the Employee Benefit Funds Section of the PLA Under New Jersey Law

Nolt seeks a declaratory judgment that the Employee Benefit Funds provision of the PLA, as interpreted by the arbitrator, is illegal under New Jersey law and violates public policy because it requires Nolt to pay benefits contributions on behalf of all Nolt employees.  Thus, Nolt asks this Court to vacate the arbitration award requiring Nolt to pay the contributions it owes for its non-union employees.

A reviewing court has limited discretion over arbitration awards pursuant to an agreement between an employer and a labor organization.  A court may vacate an arbitrator's award only when it fails to draw its essence from the agreement.  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).  "A labor arbitration decision fails to draw its essence from the collective bargaining agreement if the arbitrator acted in manifest disregard of the law, or if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination." *United Indus. Workers v. Gov't of Virgin Islands*, 987 F.2d 162, 170 (3d Cir. 1993).  As long as an arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n. v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (internal quotation marks omitted).  A court's refusal to enforce an arbitration award is a "specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco*, 484 U.S. at 42.

A court may vacate an arbitrator's interpretation of an agreement as "contrary to public policy," but only if the policy is "explicit, well defined, and dominant.  It must be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (internal quotation marks omitted).   The public policy exception is "narrow" and "does not sanction a broad judicial power to set aside arbitration awards as against public policy." *E. Associated*, 531 U.S. at 63; *Misco*, 484 U.S. at 43.

### 1.  Manifest Disregard of the Law

Nolt argues that the Employee Benefit Funds provision manifestly disregards the law because it forces Nolt to take the benefits contributions that it is statutorily required to pay its employees and divert them to the union benefit funds, and because it awards the funds a pure windfall.  Local 30 responds that the arbitrator's interpretation of the Employee Benefit Funds provision and his award requiring Nolt to pay the benefits to the union funds does not compel Nolt to withhold statutorily-mandated benefits payments to its employees.  Instead, Local 30 contends, Nolt can avoid any violation of New Jersey wage laws by paying twice: once to its employees, satisfying statutory wage and benefits requirements, and once to the union funds, satisfying Nolt's contractual obligations under the PLA.

"As a general rule, an employer is liable for fund contributions on behalf of all employees covered by a facially valid collective bargaining agreement, regardless of whether the employees actually collect benefits." *Agathos v. Starlite Motel*, 977 F.2d 1500, 1506 (3d Cir. 1992).

Nolt does not demonstrate how the arbitrator's ruling manifestly disregards the law. Nolt, as a signatory to the PLA, contracted to pay contributions to the union benefits funds on behalf of "all employees."  Nolt's contractual responsibilities obligate Nolt, not Nolt's employees, to pay into the union benefits funds.  Nolt does not explain why it is illegal for it to pay both the benefits contributions it owes to the union benefit funds and the statutorily set benefits it owes to its non-union employees.

Nolt also claims that the arbitrator's award manifestly disregards the law because forty-two of Nolt's forty-seven non-union employees are ineligible for benefits claims and therefore Nolt's contributions to the funds on their behalf produces "an unjustifiable and undeserved

windfall." Pl.'s Mot. Summ. J. 10.[6]  Nolt is correct that the union benefit funds will receive a

monetary benefit from any contributions Nolt pays on behalf of its forty-two ineligible non-

union employees.  Nolt does not explain, however, why these facts counsel against applying the

"general rule" of enforcing a facially valid agreement, even when it requires an employer to

make benefits payments for employees that cannot actually collect benefits.  According to the

terms of the facially valid PLA – an agreement to which Nolt voluntarily became a signatory –

Nolt must pay benefits contributions on behalf of all employees.  Even if Local 30 will receive

contributions for employees that it will never cover, Nolt has failed to demonstrate how this

violates the law.  The arbitrator did not manifestly disregard the law by awarding Local 30

benefits payments for Nolt's non-union employees.  Thus, the arbitrator's ruling does not fail to

draw its essence from the agreement and is entitled to deference.   I will therefore affirm the

arbitrator's decision on this ground.

---

[6]        Nolt relies solely on *Agathos v. Starlite Motel* to support its argument.  977 F.2d 1500 (3d Cir. 1992).  In *Agathos*, a union benefit fund sought to recover benefits contributions for eight employees from their employer who failed to report their employment to the funds.  *Id.* at 1503.  The Third Circuit found that the funds were partially at fault for the missing payments: "[n]owhere does the record suggest that the Funds even attempted to satisfy their basic fiduciary obligations under ERISA to identify [the employer's] employees and apprise them of their status and rights under the plans."  *Id.* at 1507.  The Third Circuit remanded the case to the district court to determine whether any of the unreported employees had a "colorable claim" against the funds for benefits and found that the employer could avoid contributing to the funds for their unreported employees "only by establishing that the employee no longer has a colorable claim for benefits."  *Id.*
        The Third Circuit explained that "[a]s a general rule, an employer is liable for fund contributions on behalf of all employees covered by a facially valid collective bargaining agreement, regardless of whether the employees actually collect benefits."  *Id.* at 1506.  Under normal circumstances, the agreement at issue in *Agathos* covering "all workers" would require the employer to make contributions on behalf of all employees.  *Id.* at 1507.  However, the Third Circuit ruled that the funds' own bad behavior, which prevented the employees from seeking benefits, dictated a different outcome.  *Id.*  Because the funds' dereliction of their fiduciary obligations "rendered ineffectual" any benefits coverage, the Third Circuit reasoned, the employer should not have to pay contributions that would award the funds a "pure windfall."  *Id.* at 1507-8.
        The outcome in *Agathos* is the exception, not the rule.  The Third Circuit couched its finding in *Agathos* in terms of the specific circumstances of the case: the Court noted that the unreported employees could not obtain benefits because "the Funds persistently violated their 'watchdog' duties under ERISA," and therefore concluded that "[t]his circumstance militates against unconditionally requiring [the employer] to make contributions to the Funds."  *Id.*  Here, Nolt does not allege that the union benefits funds have abrogated their duties or committed any malfeasance in their request for the unpaid contributions.  *Agathos* is therefore inapposite.

13

### 2.   Public Policy Concerns

Nolt generally argues that the provision, as interpreted by the arbitrator, violates the public policy underlying New Jersey's wage laws, Project Labor Agreement Law, N.J.S.A. 52:38, *et seq.*, and competitive bidding laws.  Local 30 maintains that it is Nolt's refusal to pay benefits into the union funds that undermines the public policy favoring PLAs in public works projects.

Nolt's arguments about the public policy underlying New Jersey's wage laws are, in essence, a rehash of its manifest disregard of the law argument discussed above.  Because Nolt does not explain how the Employee Benefit Funds provision compels Nolt to violate New Jersey's wage laws, Nolt similarly cannot establish that the provision violates the public policy underlying the wage laws.

Nolt also contends that the Employee Benefit Funds provision undermines the public policy underlying New Jersey's Project Labor Agreement Law ("PLA Law") and New Jersey's competitive bidding laws.   Although Nolt cites to the PLA Law, it does not identify the specific public policy or "competitive bidding laws" it believes the provision violates.  Instead, Nolt makes a general argument that the financial disadvantage of the "pay twice" model violates public policy.  Pl.'s Resp. to Defs.' Summ. J. 30.

Nolt does not provide any statutory text, legislative history, or legal precedent to establish a "well-defined and dominant" policy against the payment of contributions for all employees into the union benefits funds.  *E. Associated*, 531 U.S. at 62.  Nolt's cursory reference to the PLA Law and general mention of "competitive bidding laws" do not meet the high burden necessary to satisfy the narrow public policy exception.  Nolt's policy references are exactly the sort of

"'general considerations of supposed public interests'" that the Supreme Court has repeatedly cautioned against as inadequate.  *See, e.g.*, *E. Associated*, 531 U.S. at 62 (quoting *Muschany v. United States*, 324 U.S. 49, 65 (1945)); *Misco*, 484 U.S. at 44.

Nolt has failed to establish how the arbitrator's interpretation of the Employee Benefit Funds provision violates a well-defined policy.  Nolt's appeals to public policy are thus insufficient to meet the standard for the narrow public policy exception.  Thus, the Court must defer to the arbitrator on this ground and will affirm the arbitrator's decision.

**C.  Amount of Arbitration Award**

Because I will affirm the arbitrator's decision, I must reach Nolt's alternative request, to modify the arbitrator's award to reflect the actual number of contribution hours at issue.  Nolt attaches a joint stipulation as an exhibit to its motion for summary judgment, signed by both parties, that states that both parties agree that the arbitrator's calculation of hours was incorrect.  Pl.'s Mot. Summ. J. Ex. G.  The arbitrator based his monetary calculation on a total of 18,242.25 hours worked by Nolt's non-union employees. Based on the parties' joint stipulation, the proper total number of hours is 12,873.75.  Neither party submitted a revised dollar amount that accounts for the revised total number of hours.  The parties must submit a joint revised dollar amount that Nolt owes for the 12,873.75 hours worked by Nolt's non-union employees.

**IV.    CONCLUSION**

For the reasons set forth above, I will grant Local 30's motion for summary judgment and grant in part and deny in part Nolt's motion for summary judgment.  Thus, I will uphold the arbitrator's interpretation of the Employee Benefit Funds provision and award, but I will modify the arbitrator's award to reflect the proper total number of hours worked by Nolt's non-union

15

employees, 12,873.75.  Although this pay twice result may seem counter-intuitive, Nolt has not

shown that the arbitrator's decision is illegal or unconscionable.  I am "not authorized to review

the arbitrator's decision on the merits despite allegations that the decision rests on factual errors

or misinterprets the parties' agreement."  *Major League Baseball Players Ass'n*, 532 U.S. at 509.




s/Anita B. Brody


_____
ANITA B. BRODY, J.


Copies **VIA ECF** on _____ to:  Copies **MAILED** on _____ to: